P. Stephanie Estevez, Esq. (PSE3505)
LAW OFFICES OF TERESA M. SPINA
170 Froehlich Farm Blvd.
Woodbury, New York 11797
(516) 496-5822

*Counsel for Plaintiffs, Government Employees Insurance Co.,
GEICO Indemnity Co., GEICO General Insurance Company,
and GEICO Casualty Co.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE  COMPANY and GEICO
CASUALTY CO.,

                                 Plaintiffs,

           -against-

THREEONIX SUPPLY CORP.
PAVEL ILLINSKY
LEICA SUPPLY, INC.
GRIGORY BRANFENBRENER

                        the "Retail Defendants",

         -and-

NEW STEP SERVICES, INC.
JOHN DOE "1" (Identity not presently known but
intended to be the owner of New Step Services, Inc.)
ROPA, INC.
JOHN DOE "2" (Identity not presently known but
Intended to be the owner of Ropa, Inc.)
GALASA WHOLESALE INC.,
JOHN DOE "3" (Identity not presently known but
intended to be the owner of Galasa, Inc.),

                 the "Wholesale Defendants",

         -and-

Docket No.:

**Plaintiff Demands a Trial by
Jury**

BEDFORD MEDICAL CARE, P.C.
CAREGIVER CHIROPRACTIC, P.C.
CURE MEDICAL SERVICES, P.C.
DXR OCEAN MEDICAL SERVICES, P.C.
TARGEE MEDICAL SERVICES, P.C.
NEW QUALITY MEDICAL, P.C.
S.S. MEDICAL CARE, P.C.
VAN COURTLAND MEDICAL CARE, P.C.

the "Clinic Defendants",

-and-

RONALD DIAMANT, D.C.
RAMY HANNA, M.D.
MARC RICHARD HILAIRE, M.D
DEMETRIOS KARAKIZIS, D.C.
CARMEN ISABEL OLMEDO, M.D.*
DMITRIY RATSENBERG, M.D.
DENNY XAVIER RODRIGUEZ, M.D.
EDDY RODRIGUEZ, M.D.
ROMAN VLADIMIROVICH VAYNSHTEYN, D.C.
GUY VILLANO, D.C.
YULIYA VINOKUROVA, M.D.
CONRAD ROBERT WILLIAMS, M.D.
CHANTAL THERESA HILAIRE, M.D.
STEPHEN M. SILVERMAN, M.D.

the "Physician Defendants",

Defendants.
------------------------------------------------------------------X

## COMPLAINT

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively referred to hereinafter as "GEICO" or "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

2

## INTRODUCTION

1.     This action seeks to recover more than Eighty-Five Thousand ($84,000.00) Dollars that the Defendants wrongfully have stolen from GEICO by submitting, and causing to be submitted, fraudulent claims seeking payment for durable medical equipment and orthotic devices (e.g. cervical collars, lumbar-sacral supports, electronic muscle stimulator units, egg crate mattresses, etc.). These goods purportedly were provided to individuals ("Insureds") who were involved in automobile accidents and were eligible for insurance coverage under GEICO insurance policies.

2.     In addition, GEICO seeks a declaration that it is not legally obligated to pay more than $800,000.00 in fraudulent claims submitted through the Retail Defendants because:

(i)     Defendants Threeonix Supply Corp. ("Threeonix") and Pavel Illinsky ("Illinsky") made false and fraudulent misrepresentations to GEICO concerning the maximum permissible charges for the durable medical equipment and orthotic devices they allegedly provided to Insureds in order to obtain from GEICO payment under the New York "No-Fault" laws to which they are not entitled;

(ii)     Defendants Threeonix and Illinsky made false and fraudulent misrepresentations to GEICO by submitting charges for durable medical equipment and devices that never were dispensed to Insureds; and

(iii)     Defendants Threeonix and Illinsky failed and/or refused to provide full particulars of the nature and/or extent of the durable medical equipment and orthotic devices they purport to have supplied to Insureds.

(iv)     Defendants Leica Supply, Inc. ("Leica") and Grigory Branfenbrener ("Branfenbrener") made false and fraudulent misrepresentations to GEICO concerning the maximum permissible charges for the durable medical equipment and orthotic devices they allegedly provided to Insureds in order to obtain from GEICO payment under the New York "No-Fault" laws to which they are not entitled;

3

(v)     Defendants Leica and Branfenbrener made false and fraudulent misrepresentations to GEICO by submitting charges for durable medical equipment and devices that never were dispensed to Insureds; and

(vi)    Defendants Leica and Branfenbrener failed and/or refused to provide full particulars of the nature and/or extent of the durable medical equipment and orthotic devices they purport to have supplied to Insureds.

3.      The Defendants fall into the following categories:

(i)     Defendant Threeonix is a New York corporation that purports to purchase durable medical equipment and orthotic devices from wholesale durable medical equipment and orthotic device dealers. Threeonix then systematically submits fraudulently inflated claims to GEICO and other New York automobile insurers for the durable medical equipment and orthotic devices.

(ii)    Defendant Illinsky is the owner of Defendant Threeonix.

(iii)   Defendant Leica is a New York corporation that purports to purchase durable medical equipment and orthotic devices from wholesale durable medical equipment and orthotic device dealers. Leica then systematically submits fraudulently inflated claims to GEICO and other New York automobile insurers for the durable medical equipment and orthotic devices.

(iv)    Defendant Branfenbrener is the owner of Leica.

(Defendants Threeonix, Illinsky, Leica, and Branfenbrener are collectively referred to hereinafter as the "Retail Defendants".)

(v)     Defendant New Step Services, Inc. ("New Step") is a New York corporation that purports to sell durable medical equipment and orthotic devices on a wholesale basis. New Step purports to have sold durable medical equipment and orthotic devices to Defendant Threeonix who purports to have, in turn, provided those categories of supplies to GEICO Insureds. New Step knowingly provided fraudulent, inflated wholesale invoices to Threeonix who in turn used those invoices to support fraudulent claims submitted to GEICO and other New York automobile insurers seeking payment under the No-fault policy endorsements.

(vi)    Defendant John Doe "1" is the owner of New Step.

(vii)   Defendant Ropa, Inc. ("Ropa") is a New York corporation that purports to sell durable medical equipment and orthotic devices on a wholesale basis. Ropa purports to have sold durable medical equipment and orthotic devices to Defendant Leica, who purports to have, in turn, provided those categories of

4

supplies to GEICO Insureds. Ropa knowingly provided fraudulent, inflated wholesale invoices to Leica, who in turn used those invoices to support fraudulent claims submitted to GEICO and other New York automobile insurers seeking payment under the No-fault policy endorsements.

(viii)   Defendant John Doe "2" is the owner of Ropa.

(ix)   Defendant Galasa, Inc. ("Galasa") is a New York corporation that purports to sell durable medical equipment and orthotic devices on a wholesale basis. Galasa purports to have sold durable medical equipment and orthotic devices to Defendants Threeonix and Leica who purport to have, in turn, provided those categories of supplies to GEICO Insureds. Galasa knowingly provided fraudulent, inflated wholesale invoices to Threeonix and Leica, who in turn used those invoices to support fraudulent claims submitted to GEICO and other New York automobile insurers seeking payment under the No-fault policy endorsements.

(x)   Defendant John Doe "3" is the owner of Galasa.

(Defendants NewStep, Ropa, Galasa, John Does "1" and "2" and "3" are collectively referred to hereinafter as the "Wholesale Defendants").

(xi)   Defendant Bedford Medical Care, P.C. ("Bedford") is a professional service corporation which was licensed to do business in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Bedford directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xii)   Defendant Caregiver Chiropractic, P.C. ("Caregiver") is a professional service corporation which is licensed to do business in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Caregiver directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xiii)   Defendant Cure Medical Services, P.C. ("Cure") is a professional service corporation which was licensed to do business in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Cure directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xiv)   Defendant DXR Ocean Medical Services, P.C. ("DXR") is a professional service corporation which is licensed to do business in the State of New York. In

5

exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, DXR directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xv)     Defendant Targee Medical Services, P.C. ("Targee") is a professional service corporation which was licensed to do business in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Targee directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xvi)    Defendant New Quality Medical, P.C. ("New Quality") is a professional service corporation which is licensed to do business in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, New Quality directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xvii)   Defendant S.S. Medical Care P.C. ("SS Medical") is a professional service corporation which is licensed to do business in the State of New York. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, SS Medical directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xviii)  Defendant Van Courtland Medical Care P.C. ("Van Courtland") is a professional service corporation which is licensed to do business in the State of New York. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Van Courtland directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(Defendants Bedford, Caregiver, Cure, DXR, Targee, New Quality, SS Medical and Van Courtland are collectively referred to hereinafter as the "Clinic Defendants").

(xix)    Ronald Diamant, D.C. ("Diamant") is a chiropractor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Diamant prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

6

(xx)    Ramy Hanna, M.D. ("Hanna") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Hanna prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxi)   Marc Richard Hilaire, M.D. ("Hilaire") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Hilaire prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxii)  Demetrios Karakizis, D.C. ("Karakizis") is a chiropractor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Karakizis prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxiii) Carmen Isabel Olmedo, M.D. ("Olmedo") was a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Olmedo prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxiv)  Dmitriy Ratsenberg, M.D. ("Ratsenberg") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Ratsenberg prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxv)   Denny Xavier Rodriguez, M.D. ("DXRodriguez") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, DXRodriguez prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxvi)  Eddy Rodriguez, M.D. ("ERodriguez") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Rodriguez prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxvii) Roman Vladimirovich Vaynshteyn, D.C. ("Vaynshteyn") is a chiropractor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to

GEICO and other New York automobile insurers, Vaynshteyn prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxviii) Guy Villano, D.C. ("Villano") is a chiropractor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Villano prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxix) Yuliya Vinokurova, M.D. ("Vinokurova") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Vinokurova prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxx) Conrad Robert Williams, M.D. ("Williams") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Williams prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxxi) Chantal Theresa Hilaire, M.D. ("CHilaire") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, CHilaire prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(xxxii) Stephen M. Silverman ("Silverman") is a doctor licensed to practice in the State of New York. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Silverman prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

(Defendants Diamant, Hanna, Hilaire, Karakizis, Olmedo, Ratsenberg, DXRodriguez, ERodriguez, Vaynshteyn, Villano, Vinokurova, Williams and CHilaire and Silverman are collectively referred to hereinafter as the "Physician Defendants").

4.      As discussed below, the Retail Defendants at all times have known that the claims for durable medical equipment ("DME") and orthotic devices submitted to GEICO were fraudulent because: (i) the charges intentionally were inflated based upon an exploitation of the

payment formulas set forth in New York's "No-Fault" laws; (ii) the claims misrepresented the nature and quality of the DME and orthotic devices that were actually provided; (iii) in many cases, the goods and related services billed to GEICO never were actually provided to the Insureds in the first instance; (iv) kickback agreements had been entered into whereby Clinics and Physicians were to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

5.     As such, the Retail Defendants do not now have – and never had – any right to be compensated for their claims for DME and orthotic devices. The charts attached hereto as Exhibits "1" through "2" set forth a representative sample of the hundreds of fraudulent claims that have been identified to-date that the Defendants submitted, or caused to be submitted, to GEICO. The Defendants' interrelated fraudulent schemes began as early as November 2007 and have continued uninterrupted since that time. As a result of the interrelated schemes, GEICO has incurred damages of more than $84,000.00.

## THE PARTIES

### I.     Plaintiffs

6.     Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. are Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

## II.   Defendants

### A.   The Retail Defendants

7.     Defendant Threeonix Supply Corp. is a New York corporation with its principal place of business in Brooklyn, New York, and purports to operate from 2008 Avenue Y, Brooklyn, New York.  The location identified for Threeonix is a store-front with a locked roll-down solid metal gate, shuttered window, with a material banner, and a "For Rent" sign in the window.  Threeonix was incorporated on about January 7, 2009, and from that time through October 2009, knowingly submitted fraudulent claims to GEICO.

8.     Defendant Illinsky resides in and is a citizen of New York.  Illinsky owns and controls Threeonix.

9.     Defendant Leica Supply, Inc. is a New York corporation with its principal place of business in Brooklyn, New York, and purports to operate from 1602A McDonald Avenue, Brooklyn, New York.  Leica was incorporated on about June 5, 2007, and from November 2007 through December 2009, knowingly submitted fraudulent claims to GEICO.

10.    Defendant Branfenbrener resides in and is a citizen of New York.  Branfenbrener owns and controls Leica.

11.    In June 2010, an Indictment was issued against Branfenbrener by a grand jury sitting in the United States District Court for the Eastern District of New York. The Indictment contends that, in or about and between January 2004 and June 2010, Branfenbrener and others: (i) engaged in a scheme to defraud insurance companies by establishing and operating purported DME retailers; (ii) used the retailer to submit fraudulent claims to insurers using fraudulent wholesale invoices obtained from DME wholesalers; (iii) caused the retailer to issue checks to wholesale DME suppliers, purportedly in payment of the fraudulently-inflated wholesale

invoices, whereupon the wholesalers converted the checks into cash and returned the bulk of the money to Branfenbrener. (A copy of the eastern district Indictment is attached as Exhibit "3".)

### B.   The Wholesale Defendants

12.   Defendant New Step Services is a New York corporation with its principal place of business located in Brooklyn, New York and purports to operate from 3525 Kings Highway, Brooklyn, New York. New Step Services was incorporated on about August 5, 2008, and since that date has provided fraudulent wholesale invoices to Threeonix and other retailers. The fraudulent wholesale invoices: (i) misrepresented the wholesale prices for the DME and orthotic goods as being many multiples of the actual and legitimate wholesale prices of the DME and orthotic devices; and (ii) deliberately omitted any mention of the manufacturer, make and/or model of the DME and the orthotic devices. The durable medical equipment and orthotic devices that New Step purports to "wholesale" to Threeonix and other retailers are inferior low quality products, and cost a fraction of the amounts that are represented on New Step's fraudulent wholesale invoices that are provided to Threeonix and other retailers to support the claims ultimately submitted to GEICO and other automobile insurers.

13.   Defendant John Doe "1" resides in and is a citizen of New York. John Doe "1" owns and controls New Step.

14.   Defendant Ropa, Inc. is a New York corporation with its principal place of business located in Brooklyn, New York and purports to operate from 1811 Stillwell Avenue, Brooklyn, New York. Ropa was incorporated on about August 18, 2007, and since that date has provided fraudulent wholesale invoices to Leica and other retailers. The fraudulent wholesale invoices: (i) misrepresented the wholesale prices for the DME and orthotic goods as being many multiples of the actual and legitimate wholesale prices of the DME and orthotic devices; and (ii) deliberately omitted any mention of the manufacturer, make and/or model of the DME and the

orthotic devices. The durable medical equipment and orthotic devices that Ropa purports to "wholesale" to Leica and other retailers are inferior low quality products, and cost a fraction of the amounts that are represented on Ropa's fraudulent wholesale invoices that are provided to Leica and other retailers to support the claims ultimately submitted to GEICO and other automobile insurers.

15.     Defendant John Doe "2" resides in and is a citizen of New York. John Doe "2" owns and controls Ropa.

16.     Defendant Galasa is a New York corporation with its principal place of business located in Brooklyn, New York, and purports to operate from 2065 86th Street, Second Floor, Brooklyn, New York. Galasa was incorporated on about September 19, 2007 and since that date has provided fraudulent wholesale invoices to Threeonix, and Leica, and other retailers. The fraudulent wholesale invoices: (i) misrepresented the wholesale prices for the DME and orthotic goods as being many multiples of the actual and legitimate wholesale prices of the DME and orthotic devices; and (ii) deliberately omitted any mention of the manufacturer, make and/or model of the DME and the orthotic devices. The durable medical equipment and orthotic devices that Galasa purports to "wholesale" to Threeonix, and Leica, and other retailers are inferior low quality products, and cost a fraction of the amounts that are represented on Galasa's fraudulent wholesale invoices that are provided to Threeonix, and Leica, and other retailers to support the claims ultimately submitted to GEICO and other automobile insurers.

17.     Defendant John Doe "3" resides in and is a citizen of New York. John Doe "3" owns and controls Galasa.

## C.    The Clinic Defendants

18.    Defendant Bedford Medical Care, P.C. ("Bedford") is a professional service corporation which was licensed to do business in the State of New York and purports to do business from 1783 Bedford Ave., Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Bedford directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

19.    Defendant Caregiver Chiropractic, P.C. ("Caregiver") is a professional service corporation which is licensed to do business in the State of New York and purports to do business from 2287 Nostrand Avenue, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Caregiver directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

20.    Defendant Cure Medical Services, P.C. ("Cure") is a professional service corporation which is licensed to do business in the State of New York and purports to do business from 7211 20th Avenue, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Cure directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

21.     Defendant DXR Ocean Medical Services, P.C. ("DXR ") is a professional service corporation which is licensed to do business in the State of New York and purports to do business from 2044 Ocean Avenue, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, DXR directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

22.     Defendant Targee Medical Services, P.C. ("Targee") is a professional service corporation which was licensed to do business in the State of New Yorkand purports to do business from 420 Targee Street, Staten Island, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Targee directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

23.     Defendant New Quality Medical, P.C. ("New Quality") is a professional service corporation which was licensed to do business in the State of New York and purports to do business from 8754 Bay 16th Street, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, New Quality directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

24.     Defendant S.S. Medical Care, P.C. ("SS Medical") is a professional service corporation which was licensed to do business in the State of New York and purports to do

14

business from 961 East 174th Street, Bronx, New York. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, SS Medical directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

25.     Defendant Van Courtland Medical Care, P.C. ("Van Courtland") is a professional service corporation which was licensed to do business in the State of New York and purports to do business from 5822 Broadway, Bronx, New York. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, SS Medical directed associated physicians to prescribe large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

### D.     The Physician Defendants

26.     Ronald Diamant, D.C. (Diamant") is a chiropractor licensed to practice in the State of New York and purports to practice from 145 East 98th Street, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Diamant prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

27.     Ramy Hanna, M.D. ("Hanna") is a doctor licensed to practice in the State of New York and purports to practice from 2273 65th Street, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to

15

GEICO and other New York automobile insurers, Hanna prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

28.     Marc Richard Hilaire, M.D. ("Hilaire") is a doctor licensed to practice in the State of New York and purports to practice from 1783 Bedford Avenue, Brooklyn, New York. Hilaire is an Officer/Director/Shareholder in Bedford Medical Care, P.C.  In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Hilaire prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

29.     Demetrios Karakizis, D.C. ("Karakizis") is a chiropractor licensed to practice in the State of New York and purports to practice from 2287 Nostrand Avenue, Brooklyn, New York. Karakizis is an Officer/ Director/ Shareholder in Caregiver Chiropractic, P.C. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Karakizis prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

30.     Carmen Isabel Olmedo, M.D. ("Olmedo") (deceased) was a doctor licensed to practice in the State of New York and purports to practice from Cure Medical Services, located at 7211 20th Avenue, Brooklyn New York.   In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York

automobile insurers, Olmedo prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

31.     Dmitriy Ratsenberg, M.D. ("Ratsenberg") is a doctor licensed to practice in the State of New York and purports to practice from 8754 Bay 16th Street, Brooklyn, New York. Ratsenberg is an Officer/Director/ Shareholder of New Quality Medical, P.C. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Ratsenberg prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary and directed others to do the same.

32.     Denny Xavier Rodriguez, M.D. ("DXRodriguez") is a doctor licensed to practice in the State of New York and purports to practice from 2044 Ocean Avenue, Brooklyn, New York. DXRodriguez is an Officer/ Director/ Shareholder of DXR Ocean Medical Services, P.C. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, DXRodriguez prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions withour regard to whether or not they were medically necessary.

33.     Eddy Rodriguez, M.D. ("ERodriguez") is a doctor licensed to practice in the State of New York.  ERRodriguez is an Officer/ Director/ Shareholder of Cure Medical Services, which purports to do business from 7211 20th Avenue, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Rodriguez prescribed large amounts of

virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary and directed others to do the same.

34.    Roman Vladimirovich Vaynshteyn, D.C. ("Vaynshteyn") is a chiropractor licensed to practice in the State of New York and purports to practice from 1401 Ocean Avenue, Brooklyn, N.Y.  In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Vaynshteyn prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

35.    Guy Villano, D.C. ("Villano") is a chiropractor licensed to practice in the State of New York and purports to practice from 1783 Bedford Avenue, Brooklyn, New York. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Villano prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

36.    Yuliya Vinokurova, M.D. ("Vinokurova") is a doctor licensed to practice in the State of New York and purports to practice from 8754 Bay 16th Street, Brooklyn. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Vinokurova prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions without regard to whether or not they were medically necessary.

18

37.     Conrad Robert Williams, M.D. ("Williams") is a doctor licensed to practice in the State of New York and purports to practice from 420 Targee Street, Staten Island, New York. Williams is an Office/ Director/ Shareholder of Targee Medical Services, P.C. In exchange for kickbacks and to facilitate the Threeonix and Illinsky scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Williams prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

38.     Chantal Theresa Hilaire, M.D. ("CHilaire") is a doctor licensed to practice in the State of New York and purports to practice from 5822 Broadway, Bronx, New York. Hilaire is an Office/ Director/ Shareholder of Van Courtland Medical Care, P.C. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, CHilaire prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

39.     Stephen M. Silverman, M.D. ("Silverman") is a doctor licensed to practice in the State of New York and purports to practice from 961 East 174th Street, Bronx, New York. Silverman is an Office/ Director/ Shareholder of S.S. Medical Care, P.C. In exchange for kickbacks and to facilitate the Leica and Branfenbrener scheme to submit fraudulent claims to GEICO and other New York automobile insurers, Silverman prescribed large amounts of virtually identical DME and orthotic devices on generic prescriptions.

40.     To create the illusion that the Retail Defendants actually paid the preposterous prices on the wholesale invoices, the Retail Defendants issued checks to the Wholesale Defendants for the full invoice amounts, and then submitted the checks to GEICO and other New York automobile insurers as proof of payment.   The payment methodology was nothing more than a façade - the Wholesale Defendants converted these checks to cash through the use of

check cashers and other methods, and paid "rebates" to the Retail Defendants - returning the majority of the amounts received to the Retail Defendants, while retaining a piece for themselves.

41.     The Retail Defendants used the fraudulent wholesale invoices – in turn – to support the fraudulent charges they submitted or caused to be submitted to GEICO and other insurers.  The DME and orthotic devices that the Wholesale Defendants purported to sell to the Retail Defendants were inferior, low-quality products that cost a fraction of the amounts represented on the fraudulently inflated wholesale invoices that the Wholesale Defendants provided to the Retail Defendants and which were the basis for the billing created and submitted by the Retail Defendants.

## JURISDICTION AND VENUE

42.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.  Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act) because they arise under the laws of the United States.  In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

43.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

I.   **An Overview of the No-Fault Laws and Licensing Statutes**

    **A.**    **General Concepts**

    44.    GEICO underwrites automobile insurance in the State of New York.

    45.    New York's "No-Fault" laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the healthcare services that they need. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101 et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65 et seq.) (collectively referred to herein as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

    46.    No-Fault Benefits include up to $50,000 per Insured for necessary expenses that are incurred for health care goods and services.

    47.    An Insured can assign his or her right to No-Fault Benefits to the providers of healthcare services in exchange for those services. Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary goods and medical services provided, using the claim form required by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician or Other Provider of Health Service," or, more commonly, as an "NF-3"). In the alternative, healthcare providers sometimes submit claims using the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 Form").

    48.    Pursuant to Section 403 of the New York State Insurance Law, the NF-3s and HCFA-1500 Forms submitted by healthcare providers to GEICO, and to all other insurers, must be verified subject to the following warning:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

49.    Pursuant to 11 NYCRR 65-3.2 (c), one of the claims practice principles to be followed by all insurers is to refrain from demanding verification of facts unless there are good reasons to do so. Additionally, insurers are cautioned not to treat the applicant as an adversary under this same section. The insurer is required to act in good faith.

**B.    Regulations Governing Maximum Reimbursement for Durable Medical Equipment and Orthotic Devices**

50.    Durable medical equipment generally consists of items that can withstand repeated use, and primarily consists of items used for medical purposes by individuals in their homes, such as bed boards, cervical pillows, orthopedic mattresses, electronic muscle stimulator units ("EMS units"), hot/cold packs, infrared lamps, lumbar cushions, massagers, orthopedic car seats, transcutaneous electrical nerve stimulators ("TENs units"), thermophores (electrical moist heating pads), over-the-door cervical traction units, and whirlpool baths. Orthotic devices, a subgroup of DME, are instruments that are applied to the human body to align, support, or correct deformities, or to improve the movement of joints, spine, or limbs. These devices come in direct contact with the outside of the body, and include such items as cervical collars (i.e., "whiplash" collars), ankle supports, wrist braces, and the like.

51.    The No-Fault Laws set forth maximum charges that may be submitted by healthcare providers for DME and orthotic devices. One of the primary purposes in limiting the maximum charges for DME and orthotic devices is to ensure that Insureds' $50,000 in maximum No-Fault Benefits is not artificially depleted by inflated DME and orthotic device charges. In a

June 16, 2004 Opinion Letter, the New York State Insurance Department recognized the harm

inflicted on Insureds by inflated DME and orthotic device charges:

> [A]n injured person, with a finite amount of No-Fault benefits available, having assigned his rights to a provider in good faith, would have DME items of inflated fees constituting a disproportionate share of benefits, be deducted from the amount of the person's No-Fault benefits, resulting in less benefits available for other necessary health related services that are based upon reasonable fees.

> (A copy of the June 16, 2004 Opinion Letter is attached as Exhibit "4")

52.    Effective October 6, 2004, the maximum permissible charge for DME and

orthotic devices is the fee payable for such DME and orthotic devices under the New York State

Medicaid program at the time such DME and orthotic devices are provided. See 11 N.Y.C.R.R.

(Appendix 17-C, Part F (a) (effective Oct 6, 2004)).

53.    If the New York State Medicaid program has not established a fee payable for the

specific item, then the fee payable shall be the lesser of the acquisition cost (i.e., the line item

cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable

considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus

50 percent, or the usual and customary price charged to the general public. See 11 N.Y.C.R.R.

(Appendix 17-C, Part F (a) (effective Oct. 6, 2004)).

54.    Insurers such as GEICO are entitled to receive a proper proof of claim. See 11

N.Y.C.R.R. § 65-3.8(f). To be eligible for payment, a claim seeking reimbursement for DME

and/or orthotic devices must include a description of the "full particulars of the nature and

extent" of the items and services for which payment is sought. See 11 N.Y.C.R.R. § 65-1.1.

## II.    The Defendants' Interrelated Fraudulent Schemes

55.    Beginning in November 2007 and continuing through June 2010, the Defendants

masterminded and implemented a series of interrelated schemes through which they stole

thousands of dollars from GEICO and other insurers via the submission of fraudulent claims for

DME and orthotic devices. To date, the Defendants submitted more than Eight Hundred Thousand ($800,000.00) Dollars in fraudulent charges to GEICO, of which more than Eighty Four Thousand ($84,000.0) Dollars have been paid.

56. Each of the interrelated schemes operated in a fundamentally identical manner. First, in coordination with the Wholesale Defendants, the Retail Defendants paid kickbacks to Physicians and No-Fault Clinics in the New York metropolitan area that purport to provide treatment to high volumes of Insureds. In exchange for the kickbacks, and to facilitate the scheme, the Physicians - either independently or associated with the Clinics - prescribed large amounts of DME and orthotic devices without regard to whether or not they were medically necessary, which purportedly were supplied to Insureds by the Retail Defendants. The prescriptions were never given to the Insureds. In exchange for the kickbacks, the prescriptions were routed directly to the Retail Defendants by the Physicians and/or Clinics to ensure that the Insureds did not fill the prescriptions with legitimate DME and orthotic device retailers.

57. In connection with the kickbacks, the Physicians and/or Clinics ensured that their associated physicians prescribe DME and orthotic devices that were not covered by the New York State Medicaid fee schedule, and without regard to whether or not they were medically necessary. This enabled the Retail Defendants to seek reimbursement on the DME and orthotic devices based on their purported acquisition costs with respect to such goods.

58. To the extent that the Physicians and/or Clinics prescribed DME and orthotic devices that *were* covered by the New York State Medicaid Fee Schedule, the prescriptions were intentionally written in a generic, non-descript manner thus enabling the Retail Defendants to misrepresent the nature and quality of the items that they supplied so as to claim entitlement to a

higher fee payable. These prescriptions were always submitted contemporaneously with and as part of the Retail Defendants' proof of claim.

59.     In order to maximize the fraudulent charges that they could submit to GEICO and other insurers, each of the Retail Defendants entered into secret agreements with one or more of the Wholesale Defendants, whereby – in exchange for a share in the profits of the fraud and the Retail Defendants' efforts in negotiating kickback agreements with Physicians and/or the Clinics – the Wholesale Defendants provided the Retail Defendants with fraudulently inflated wholesale invoices. These fraudulently inflated wholesale invoices: (i) stated wholesale prices for the DME and orthotic devices that were far in excess of the actual wholesale price of the DME and orthotic devices; and (ii) deliberately omitted any mention of the make and model of the DME and orthotic devices. These wholesale invoices were always submitted contemporaneously with and as part of the Retail Defendants' proof of claim.

60.     To create the illusion that the Retail Defendants actually paid the inflated prices on the wholesale invoices, the Retail Defendants issued checks to the Wholesale Defendants for the full invoice amounts, and then submitted the checks to GEICO and other New York automobile insurers as proof of payment.  The payment methodology was nothing more than a façade: The Wholesale Defendants converted these checks to cash through the use of check cashers and other methods, then paid "rebates" to the Retail Defendants - returning the majority of the amounts received to the Retail Defendants, while retaining a portion for themselves.

61.     After obtaining the fraudulent wholesale invoices, the Retail Defendants generated and submitted bills to GEICO and other insurers knowingly misrepresenting the actual amounts that they paid for the DME and orthotic devices, and knowingly misrepresenting the quality of the DME and orthotic devices that they provided.

62.     Toward this end, the Retail Defendants created and submitted hundreds of bills that – like the underlying wholesale invoices – deliberately omitted any meaningful information regarding the DME and orthotic devices, including the manufacturer, make and model of the DME and orthotic devices that the Retail Defendants purported to supply to Insureds.

63.     By creating and submitting billing that deliberately omitted any information that would enable GEICO and other insurers to identify the manufacturer, make and model of the DME and orthotic devices, the Retail Defendants knowingly concealed the fact that: (i) the DME and orthotic devices supplied by the Retail Defendants, to the extent that they were provided at all, were cheap and of a low quality; (ii) the Retail Defendants, in virtually every instance, charged GEICO and other insurers far more than the maximum permissible amounts for the DME and orthotic devices that were supplied; and (iii) the Retail Defendants frequently billed GEICO and other insurers for DME and orthotic devices they never supplied in the first instance.

**E.     The Threeonix Scheme**

64.     In or about January 2009, Threeonix and Illinsky entered into kickback arrangements with the Clinics (Bedford, Caregiver, Cure, DXR, Targee, New Quality ) and Physicians (Diamant, Hanna, Hilaire, Karakizis, Olmedo, Ratsenberg, DXRodriguez, ERodriguez, Vaynshteyn, Villano, Vinokurova, Williams ) to facilitate the scheme, and secret agreements with the Wholesale Defendants (New Step, Galasa, John Doe "1", and John Doe "3") whereby the Wholesale Defendants agreed to supply fraudulent and inflated wholesale invoices in exchange for a share in the profits from the scheme.

65.     In exchange for payments from Threeonix and Illinsky, the Clinics and Physicians direct their associated physicians and chiropractors to prescribe large amounts of virtually identical DME and orthotic devices to Insureds, without regard to the Insureds' symptoms or individual presentment.

66.     In exchange for the kickbacks, the Clinics and Physicians directed their associated physicians to prescribe DME for which the New York State Medicaid program has not established a schedule of fees payable, and to issue generic prescriptions for DME and orthotic devices, omitting specific descriptions of the devices required.

67.     Pursuant to their agreement with Threeonix and Illinsky, in exchange for a share in the profits of the scheme, and to support Threeonix and Illinsky's kickback arrangements with the Clinics and Physicians, the Wholesale Defendants provided Threeonix and Illinsky with fraudulent wholesale invoices, which: (i) stated wholesale prices for the DME and orthotic devices that are false and far in excess of the actual legitimate wholesale price of the supplies; and (ii) deliberately omitted any mention of the manufacturer, make and model of the DME and orthotic devices.

68.     The Wholesale Defendants provided the fraudulent wholesale invoices to Threeonix and Illinsky with the knowledge that they would be submitted to GEICO and other New York automobile insurers in support of Threeonix's fraudulent billing.   Threeonix and Illinsky – in close cooperation the Wholesale Defendants – then used the prescriptions and fraudulently-inflated wholesale invoices to bill GEICO amounts that were far in excess of the maximum amounts they otherwise would be eligible to receive.

69.     In cases where the New York State Medicaid program has not prescribed a fee payable for a given item or a class of items, Threeonix and Illinsky used the non-descript invoices provided by the Wholesale Defendants to support upcharging their claim submissions so as to claim entitlement to a higher payable fee.  For example:

(i)     The Wholesale Defendants repeatedly provided boilerplate non-descript invoices to Threeonix and Illinsky that represented approximately $440.00 as the wholesale price for an "EMS unit, 4 lead" (neuromuscular stimulator, portable unit). Because the New York State Medicaid program has not established a fee payable

for "EMS units", Threeonix and Illinsky used these invoices to submit billing to GEICO seeking 150 percent of their purported "acquisition cost" for the EMS units – or $660.00 per unit.  However, the legitimate wholesale cost for the EMS units supplied to Threeonix by the Wholesale Defendants never exceeded $50.00. In many instances, the item provided to Insureds was not actually an EMS unit, but rather a TENS unit for which $76.25 is the maximum scheduled reimbursable charge.

(ii)    The Wholesale Defendants repeatedly provided boilerplate non-descript wholesale invoices to Threeonix and Illinsky that represented approximately $135.00 as the wholesale price for a "massager".  Because the New York State Medicaid program has not established a fee payable for "massagers", Threeonix and Illinsky used these invoices to submit billing to GEICO seeking 150 percent of their purported "acquisition cost" for the massagers – approximately $202.00 per massager.  However, the legitimate wholesale cost for the massager supplied to Threeonix by the Wholesale Defendants never exceeded $15.00.

(iii)    The Wholesale Defendants repeatedly provided boilerplate non-descript wholesale invoices to Threeonix and Illinsky that represented approximately $380.00 as the wholesale price for a "whirlpool".  Because the New York State Medicaid program has not established a fee payable for "whirlpools", Threeonix and Illinsky used these invoices to submit billing to GEICO seeking approximately 150 percent of their purported "acquisition cost" for the whirlpools –$540.00 per whirlpool.  In actuality, Threeonix never paid the Wholesale Defendants more than $30.00 for the "whirlpool spas" it supplied, which essentially are cheap, portable air-blowers that could be hung over the side of a bathtub.

(iv)    The Wholesale Defendants repeatedly provided boilerplate non-descript wholesale invoices to Threeonix and Illinsky that represented approximately $110.00 as the wholesale price for a "mattress".  The New York State Medicaid program has not established a fee payable for an "egg crate mattress", but has established a fee payable of $19.48 for a "dry pressure pad".   Accordingly, Threeonix and Illinsky used the boilerplate non-descript invoices to falsely represent that they supplied something more substantial than a basic foam mattress and to submit billing to GEICO seeking 150 percent of their purported "acquisition cost" for the mattresses – approximately $165.00 per mattress. Threeonix and Illinsky never provided foam rubber mattresses to Insureds. Rather, they provided simple egg-crate mattress pads.  The legitimate wholesale cost for the egg-crate mattress pads supplied to Threeonix by the Wholesale Defendants never exceeded $12.00.

These examples are not exhaustive.

28

70.    In cases where the New York State Medicaid program *has* prescribed a fee payable for a given item or a class of items, Threeonix and Illinsky misrepresented the nature of the items actually prescribed and furthermore misrepresented the item that Threeonix supplied so as to claim entitlement to a higher fee payable. For instance:

(i)    Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribed basic "lumbar cushions" to Insureds – essentially, lumbar cushions are wedge-shaped pillows that can be placed behind the back when sitting in a chair. The New York State Medicaid program has established a fee payable of $22.04 for ordinary lumbar cushions of the type that Threeonix actually supplied to Insureds, to the extent that they provided them at all. Even so, Threeonix and Illinsky routinely billed GEICO $297.00 for lumbar cushions.

(ii)   Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribe basic LSOs (i.e., lumbar sacral orthoses, or back-braces) for Insureds. The New York State Medicaid program has established a fee payable of $65.92 for such basic LSOs, and this figure requires that the Insured receive fitting and adjustment services from the healthcare provider. The Medicaid program has established higher fees payable for more complex LSOs. Threeonix actually provides basic LSOs to Insureds, to the extent that they provided them at all, and they virtually never provided the requisite fitting and adjustment services. Threeonix's cost per unit for these cheap, basic LSOs is no more than $15.00.  Even so, Threeonix and Illinsky repeatedly created and submitted bills seeking approximately $255.00 for far more complex LSOs, including fitting and adjustment services, when in fact no such products were prescribed or dispensed and no such services were rendered.

(iii)  Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribe basic knee supports for Insureds. The New York State Medicaid program has established a fee payable of $38.00 for ordinary elastic knee braces, and this figure requires that the Insured receive fitting and adjustment services from the healthcare provider. The Medicaid program has established higher fees payable for more complex, rigid, padded, or jointed knee braces. Threeonix and Illinsky actually provided ordinary elastic knee braces to Insureds, to the extent that they provided them at all, and they virtually never provided the requisite fitting and adjustment services. The cost to Threeonix per unit for these cheap, basic knee braces is no more than $15.00. Even so, Threeonix and Illinsky repeatedly created and submitted bills seeking approximately $82.00 for more complex padded knee braces.

(iv)   Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribed basic foam rubber "cervical collars" to Insureds. The New York State Medicaid program has established a fee payable of $6.80 for

ordinary foam rubber cervical collars, and higher amounts for more complex, semi-rigid cervical collars. Threeonix and Illinsky actually provided ordinary foam rubber cervical collars to Insureds, to the extent that they provided them at all. Even so, Threeonix and Illinsky consistently billed GEICO $82.00 for more elaborate two-piece, semi-rigid, thermoplastic foam cervical collars using fraudulent wholesale invoices from the Wholesale Defendants, which falsely represented that Threeonix and Illinsky paid either $50.00 for the collars. However, the legitimate wholesale cost for the basic cervical collars they actually provided never exceeded $10.00.

These examples are not exhaustive.

71.     In addition, Threeonix and Illinsky intentionally created and submitted fraudulent delivery receipts for the equipment allegedly dispensed to GEICO insureds. In actuality, to the extent that Threeonix provided the goods at all, virtually all of the DME and orthotic devices were handed to the Insureds at the Clinics. The Insureds are required to sign "delivery receipts" as a condition precedent to receiving the DME and orthotic devices, notwithstanding the fact that the "delivery receipts" were false.

### F.     The Leica Scheme

72.     In or about October 2007, Leica and Branfenbrener entered into kickback arrangements with the Clinics (SS Medical and Van Courtland) and Physicians (CHilaire and Silverman) to facilitate the scheme, and secret agreements with the Wholesale Defendants (Galasa, Ropa, John Doe "2" and John Doe "3") whereby the Wholesale Defendants agreed to supply fraudulent and inflated wholesale invoices in exchange for a share in the profits from the scheme.

73.     In exchange for payments from Leica and Branfenbrener, the Clinics and Physicians direct their associated physicians and chiropractors to prescribe large amounts of virtually identical DME and orthotic devices to Insureds, without regard to the Insureds' symptoms or individual presentment.

30

74. In exchange for the kickbacks, the Clinics and Physicians directed their associated physicians to prescribe DME for which the New York State Medicaid program has not established a schedule of fees payable, and to issue generic prescriptions for DME and orthotic devices, omitting specific descriptions of the devices required.

75. Pursuant to their agreement with Leica and Branfenbrener, in exchange for a share in the profits of the scheme, and to support Leica and Branfenbrener's kickback arrangements with the Clinics and Physicians, the Wholesale Defendants provided Leica and Branfenbrener with fraudulent wholesale invoices, which: (i) stated wholesale prices for the DME and orthotic devices that are false and far in excess of the actual legitimate wholesale price of the supplies; and (ii) deliberately omitted any mention of the manufacturer, make and model of the DME and orthotic devices.

76. The Wholesale Defendants provided the fraudulent wholesale invoices to Leica and Branfenbrener with the knowledge that they would be submitted to GEICO and other New York automobile insurers in support of Leica's fraudulent billing.

77. In cases where the New York State Medicaid program has not prescribed a fee payable for a given item or a class of items, Leica and Branfenbrener used the non-descript invoices provided by the Wholesale Defendants to support their claim submissions so as to claim entitlement to a fee higher than the fee they would be eligible to receive. For example:

(i) The Wholesale Defendants repeatedly provided boilerplate non-descript invoices to that Leica and Branfenbrener represented approximately $440.00 as the wholesale price for an "EMS unit, 4 lead" (neuromuscular stimulator, portable unit). Because the New York State Medicaid program has not established a fee payable for "EMS units", Leica and Branfenbrener used these invoices to submit billing to GEICO seeking 150 percent of their purported "acquisition cost" for the EMS units – or $660.00 per unit. However, the legitimate wholesale cost for the EMS units supplied to Leica by the Wholesale Defendants never exceeded $50.00. In many instances, the item provided to Insureds was not actually an EMS unit,

but rather a TENS unit for which $76.25 is the maximum scheduled reimbursable charge.

(ii)     The Wholesale Defendants repeatedly provided boilerplate non-descript wholesale invoices to Leica and Branfenbrener that represented approximately $125.00 as the wholesale price for a "massager". Because the New York State Medicaid program has not established a fee payable for "massagers", Leica and Branfenbrener used these invoices to submit billing to GEICO seeking 150 percent of their purported "acquisition cost" for the massagers – approximately $185.00 per massager. However, the legitimate wholesale cost for the massager supplied to Leica by the Wholesale Defendants never exceeded $15.00.

(iii)    The Wholesale Defendants repeatedly provided boilerplate non-descript wholesale invoices to Leica and Branfenbrener that represented approximately $380.00 as the wholesale price for a "whirlpool". Because the New York State Medicaid program has not established a fee payable for "whirlpools", Leica and Branfenbrener used these invoices to submit billing to GEICO seeking approximately 150 percent of their purported "acquisition cost" for the whirlpools –$570.00 per whirlpool. In actuality, Leica never paid the Wholesale Defendants more than $30.00 for the "whirlpool spas" it supplied, which essentially are cheap, portable air-blowers that could be hung over the side of a bathtub.

(iv)    The Wholesale Defendants repeatedly provided boilerplate non-descript wholesale invoices to Leica and Branfenbrener that represented approximately $103.00 as the wholesale price for a "mattress". The New York State Medicaid program has not established a fee payable for an "egg crate mattress", but has established a fee payable of $19.48 for a "dry pressure pad". Accordingly, Leica and Branfenbrener used the boilerplate non-descript invoices to falsely represent that they supplied something more substantial than a basic foam mattress and to submit billing to GEICO seeking 150 percent of their purported "acquisition cost" for the mattresses – approximately $153.13 per mattress. Leica and Branfenbrener never provided foam rubber mattresses to Insureds. Rather, they provided simple egg-crate mattress pads. The legitimate wholesale cost for the egg-crate mattress pads supplied to Leica by the Wholesale Defendants never exceeded $12.00.

These examples are not exhaustive.

78.     In cases where the New York State Medicaid program *has* prescribed a fee payable for a given item or a class of items, Leica and Branfenbrener misrepresented the nature of the items actually prescribed and furthermore misrepresented the item that Leica supplied so as to claim entitlement to a higher fee payable. For instance:

(i)     Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribed basic "lumbar cushions" to Insureds – essentially, lumbar cushions are wedge-shaped pillows that can be placed behind the back when sitting in a chair. The New York State Medicaid program has established a fee payable of $22.04 for ordinary lumbar cushions of the type that Leica actually supplied to Insureds, to the extent that they provided them at all.  Even so, Leica and Branfenbrener routinely billed GEICO $297.45 for lumbar cushions.

(ii)    Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribe basic LSOs (i.e., lumbar sacral orthoses, or back-braces) for Insureds. The New York State Medicaid program has established a fee payable of $65.92 for such basic LSOs, and this figure requires that the Insured receive fitting and adjustment services from the healthcare provider. The Medicaid program has established higher fees payable for more complex LSOs. Leica actually provides basic LSOs to Insureds, to the extent that they provided them at all, and they virtually never provided the requisite fitting and adjustment services. Leica cost per unit for these cheap, basic LSOs is no more than $15.00. Even so, Leica and Branfenbrener repeatedly created and submitted bills seeking approximately $175.50 for far more complex LSOs, including fitting and adjustment services, when in fact no such products were prescribed or dispensed and no such services were rendered.

(iii)   Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribe basic knee supports for Insureds. The New York State Medicaid program has established a fee payable of $38.00 for ordinary elastic knee braces, and this figure requires that the Insured receive fitting and adjustment services from the healthcare provider. The Medicaid program has established higher fees payable for more complex, rigid, padded, or jointed knee braces. Leica and Branfenbrener actually provided ordinary elastic knee braces to Insureds, to the extent that they provided them at all, and they virtually never provided the requisite fitting and adjustment services. The cost to Leica per unit for these cheap, basic knee braces is no more than $15.00. Even so, Leica and Branfenbrener   repeatedly created and submitted bills seeking approximately $110.00 for more complex padded knee braces.

(iv)    Physicians and/or chiropractors either independently or associated with the Clinics routinely prescribed basic foam rubber "cervical collars" to Insureds. The New York State Medicaid program has established a fee payable of $6.80 for ordinary foam rubber cervical collars, and higher amounts for more complex, semi-rigid cervical collars. Leica and Branfenbrener actually provided ordinary foam rubber cervical collars to Insureds, to the extent that they provided them at all.  Even so, Leica and Branfenbrener consistently billed GEICO $77.50 for more elaborate two-piece, semi-rigid, thermoplastic foam cervical collars using fraudulent wholesale invoices from the Wholesale Defendants, which falsely represented that Leica and Branfenbrener paid $51.00 for the collars. However,

33

the legitimate wholesale cost for the basic cervical collars they actually provided never exceeded $10.00.

These examples are not exhaustive.

79.     In addition, Leica and Branfenbrener intentionally created and submitted fraudulent delivery receipts for the equipment allegedly dispensed to GEICO insureds. In actuality, to the extent that Leica provided the goods at all, virtually all of the DME and orthotic devices were handed to the Insureds at the Clinics. The Insureds are required to sign "delivery receipts" as a condition precedent to receiving the DME and orthotic devices, notwithstanding the fact that the "delivery receipts" were false.

### FIRST CAUSE OF ACTION AGAINST
### THREEONIX SUPPLY CORP. AND LEICA SUPPLY INC.
### (Declaratory Judgment Under 28 U.S.C. § 2201)

80.     GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 79 of this Complaint as if fully set forth at length herein.

81.     There is an actual case in controversy between GEICO and THREEONIX and LEICA regarding more than Eight Hundred Thousand ($800,000.00) Dollars in fraudulent billing for DME and orthotic devices that allegedly have been provided to GEICO's Insureds.

82.     GEICO contends that Threeonix and Leica have no right to receive payment for any pending bills they have submitted because:

(i)     Threeonix and Leica made false and fraudulent misrepresentations to GEICO concerning the maximum permissible charges for the durable medical equipment and orthotic devices in order to obtain from GEICO payment under the New York no-fault laws to which they are not entitled; and

(ii)    Threeonix and Leica made false and fraudulent misrepresentations to GEICO by submitting or causing to be submitted charges for durable medical equipment and devices that never were dispensed to Insureds; and

34

(iii)   Threeonix and Leica failed and/or refused to provide full particulars of the nature and/or extent of the durable medical equipment and orthotic devices they purport to have supplied to Insureds.

83.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that:

(i)     Threeonix and Leica have no right to receive payment for any pending bills submitted to GEICO because they knowingly made false and fraudulent misrepresentations to GEICO concerning the maximum permissible charges for the DME and orthotic devices in order to obtain from GEICO payment under the New York no-fault laws to which they are not entitled; and

(ii)    Threeonix and Leica have no right to receive payment for any pending bills submitted to GEICO because they failed and/or refused to provide full particulars of the nature and/or extent of the DME and orthotic devices they purport to have supplied to Insureds; and

(iii)   Threeonix and Leica have failed and/or refused to provide full particulars of the nature and/or extent of the durable medical equipment and orthotic devices they purport to have supplied to Insureds.

### SECOND CAUSE OF ACTION AGAINST ILLINSKY
### (Violation of 18 U.S.C. 1962(c))

84.     GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 83 of this Complaint as if fully set forth at length herein.

85.     THREEONIX SUPPLY CORP. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

86.     Illinsky has knowingly conducted and/or participated, directly or indirectly, in the conduct of Threeonix's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for approximately one year. Furthermore, this pattern of racketeering activity poses a specific threat of extending indefinitely into the future, inasmuch as Threeonix continues to attempt

collection on the fraudulent billing to the present day. These acts of mail fraud include, but are not limited to, those that are described in the chart which is annexed hereto as Exhibit "1".

87.     Threeonix's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Illinsky operated Threeonix, insofar the majority of the bills submitted to GEICO and other New York automobile insurers through Threeonix are fraudulently inflated and knowingly are predicated, in turn, on fraudulent wholesale invoices. Threeonix never was entitled to bill for or to collect these charges from GEICO, and the acts of mail fraud therefore were essential in order for Threeonix to function. Furthermore, the intricate planning required to carry out and to conceal the predicate acts of mail fraud implies a threat of potential continued criminal activity.

88.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least Thirty-Six Thousand ($36,000.00) Dollars pursuant to the fraudulent bills submitted by Threeonix through Illinsky.

89.     By reason of its injury, GEICO is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION AGAINST ILLINSKY, NEW STEP SERVICES, JOHN DOE "1", GALSA, AND JOHN DOE "3"
### (Violation of 18 U.S.C. 1962(d))

90.     GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 89 of this Complaint as if fully set forth at length herein.

91.     Threeonix, Inc. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

92.     Illinsky, New Step Services, John Doe"1", Galasa, and John Doe "2" each have been employed by and/or associated with the Threeonix enterprise.

93.     Illinsky, New Step Services, John Doe"1", Galasa, and John Doe "3" knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Threeonix enterprise through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for approximately one year. Furthermore, this pattern of racketeering activity poses a specific threat of extending indefinitely into the future, inasmuch as the Threeonix enterprise continues to attempt collection on fraudulent billing to the present day.  These acts of mail fraud include, but are not limited to, those that are described in the chart annexed hereto as Exhibit "1."

94.     Illinsky, New Step Services, John Doe"1", Galasa, and John Doe "3" knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other New York automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

95.     GEICO has been injured in its business and property by reason of the above-described conduct of Illinsky, New Step Services, John Doe"1", Galasa, and John Doe "3" in that it has paid an amount to be determined at trial, but in no event less than Thirty Thousand ($30,000.00) Dollars, pursuant to the fraudulent bills submitted through Threeonix.

96.     By reason of its injury, GEICO is entitled to treble damages, costs and reasonable attorney's fees pursuant to 18 U.S.C. Section 1964(c), and any other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION AGAINST
### THREEONIX AND ILLINSKY
### (Common Law Fraud)

97.    GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 96 of this Complaint as if fully set forth at length herein.

98.    Threeonix and Illinsky intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for DME and orthotic devices.

99.    The false and fraudulent statements of material fact and acts of fraudulent concealment include:

    (i)    In every claim for DME for which the New York State Medicaid program has not established fees payable, the representation that Threeonix's charges for DME and orthotic devices did not exceed the lesser of the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50 percent, or the usual and customary price charged to the general public.

    (ii)    In every claim for DME for which the New York State Medicaid program has not established fees payable, the representation that the prices reflected in the wholesale invoices, when provided, were bona fide and that Threeonix actually paid the wholesaler the amounts set forth in the wholesale invoices.

    (iii)    In every claim for DME and orthotic devices for which the New York State Medicaid program has established fees payable, the representation that the goods represented in the billing actually were the goods supplied to Insureds.

    (iv)    In every claim, concealment of the fact that the DME and orthotic devices actually provided to Insureds were cheap, low-quality goods, rather than the far more expensive goods for which billing was submitted.

    (v)    In every claim, concealment of the fact that Threeonix was rebated a large percentage of the money that it represented to have paid to the Wholesaler Defendants.

    (vi)    In every claim, concealment of the fact that the DME and orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Threeonix and Illinsky paid kickbacks to the Physicians and/or Clinics to

induce the Physicians and/or Clinics to direct their associated physicians to (a) prescribe large amounts of medically unnecessary DME and orthotic devices, (b) primarily prescribe DME not covered by the New York State Medicaid fee schedule, and (c) with respect to DME covered by the New York State Medicaid Fee Schedule and orthotic devices, write the prescriptions in a generic non-descript manner, all of which was designed to permit Threeonix and Illinsky to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to GEICO and other New York automobile insurers.

100.   Threeonix and Illinsky made false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges that were not compensable under the No-Fault Laws, or that were far in excess of the charges that otherwise would be compensable under the No-Fault Laws.

101.   GEICO justifiably relied on Threeonix's and Illinsky's false and fraudulent representations, and as a proximate result has incurred damages of more than Thirty Thousand ($30,000.00) Dollars based upon the fraudulent charges.

102.   Threeonix and Illinsky's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

103.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTH CAUSE OF ACTION AGAINST**
**THREEONIX AND ILLINSKY**
**(Unjust Enrichment)**

104.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 103 above.

105.   As set forth above, Threeonix and Illinsky have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

106.    When GEICO paid the bills and charges submitted by or on behalf of Threeonix for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Threeonix and Illinsky's improper, unlawful, and/or unjust acts.

107.    Threeonix and Illinsky have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

108.    Threeonix and Illinsky's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

109.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of Thirty-Six Thousand ($36,000.00) Dollars.

**SIXTH CAUSE OF ACTION AGAINST NEW STEP SERVICES, JOHN DOE "1" AND GALASA AND JOHN DOE "3" AND THE PHYSICIAN AND CLINIC DEFENDANTS (BEDFORD, CAREGIVER, CURE, DXR, TARGEE, NEW QUALITY, AND DIAMANT, HANNA, HILAIRE, KARAKIZIS, OLMEDO, RATSENBERG, DXRODRIGUEZ, ERODRIGUEZ, VAYNSHTEYN, VILLANO, VINOKUROVA, WILLIAMS)**

**(Aiding and Abetting Fraud)**

110.    GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 109 of this Complaint as if fully set forth at length herein.

111.    New Step, John Doe"1", Galasa, John Doe "3" (Wholesale Defendants), and Bedford, Caregiver, Cure, DXR, Targee, New Quality, and Diamant, Hanna, Hilaire, Karakizis, Olmedo, Ratsenberg, Dxrodriguez, ERodriguez, Vaynshteyn, Villano, Vinokurova, Williams (the Clinic and Physician Defendants) knowingly aided and abetted the fraudulent scheme perpetrated on GEICO by Threeonix and Illinsky.

112.    The acts taken by the Wholesale Defendants and the Clinic and Physician Defendants in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs in order to support the fraudulent billing submitted to GEICO and other New York automobile insurers through Threeonix (Wholesale Defendants); (ii) knowingly creating fraudulent invoices through the deliberate omission of the most basic information associated with the DME and orthotic supplies provided, including the manufacturer, make and/or model of the supplies (Wholesale Defendants); (iii) converting check payments received from Threeonix and Illinsky into cash, and then returning/rebating the bulk of the cash to Threeonix and Illinsky, to make it appear as if Threeonix and Illinsky actually paid the prices for the DME and orthotic devices as set forth on the fraudulent wholesale invoices (Wholesale Defendants); and (iv) knowingly supporting the negotiation and performance of kickback agreements between Threeonix and Illinsky and the Physicians and/or Clinics (Wholesale Defendants); and (v) knowingly entering into negotiation and performance of kickback agreements with Threeonix and Illinsky (Clinics and Physicians).

113.    The conduct of the Wholesale Defendants and the Clinic and Physician Defendants in furtherance of the fraudulent scheme is significant and material. The conduct of the Wholesale Defendants and the Clinic and Physician Defendants is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Threeonix and Illinsky to obtain fraudulently-inflated payments from GEICO and from other New York automobile insurers.

114.    The Wholesale Defendants and the Clinic and Physician Defendants aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to

Threeonix and Illinsky for DME and orthotic devices that were not compensable under the No-Fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

115.    The conduct of the Wholesale Defendants and the Clinic and Physician Defendants caused GEICO to pay money based upon the fraudulent charges submitted through Threeonix in an amount to be determined at trial, but in no event less than Thirty-Six Thousand ($36,000.00) Dollars.

116.    The Wholesale Defendants and the Clinic and Physician Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

117.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION AGAINST BRANFENBRENER
### (Violation of 18 U.S.C. 1962(c))

118.    GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 117 of this Complaint as if fully set forth at length herein.

119.    Leica Supply Inc. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

120.    Branfenbrener has knowingly conducted and/or participated, directly or indirectly, in the conduct of Leica's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for approximately one year. Furthermore, this pattern of racketeering activity poses a specific

threat of extending indefinitely into the future, inasmuch as Leica continues to attempt collection on the fraudulent billing to the present day. These acts of mail fraud include, but are not limited to those that are described in the chart which is annexed hereto as Exhibit "2".

121. Leica's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Branfenbrener operated Leica, insofar the majority of the bills submitted to GEICO and other New York automobile insurers through Leica are fraudulently inflated and knowingly are predicated, in turn, on fraudulent wholesale invoices. Leica never was entitled to bill for or to collect these charges from GEICO, and the acts of mail fraud therefore were essential in order for Leica to function. Furthermore, the intricate planning required to carry out and to conceal the predicate acts of mail fraud implies a threat of potential continued criminal activity.

122. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least Forty-Eight Thousand ($48,000.00) Dollars pursuant to the fraudulent bills submitted by Leica through Branfenbrener.

123. By reason of its injury, GEICO is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## EIGHTH CAUSE OF ACTION AGAINST BRANFENBRENER, ROPA, JOHN DOE "2", GALSA, AND JOHN DOE "3"
### (Violation of 18 U.S.C. 1962(d))

124. GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 123 of this Complaint as if fully set forth at length herein.

125.    Leica Supply Inc. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

126.    Branfenbrener, Ropa, John Doe"2", Galasa, and John Doe "3" each have been employed by and/or associated with the Leica enterprise.

127.    Branfenbrener, Ropa, John Doe"2", Galasa, and John Doe "3" knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Leica enterprise through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for approximately one year. Furthermore, this pattern of racketeering activity poses a specific threat of extending indefinitely into the future, inasmuch as the Leica enterprise continues to attempt collection on fraudulent billing to the present day.  These acts of mail fraud include, but are not limited to, those that are described in the chart annexed hereto as Exhibit "2".

128.    Branfenbrener, Ropa, John Doe "2", Galasa, and John Doe "3" knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other New York automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

129.    GEICO has been injured in its business and property by reason of the above-described conduct of Branfenbrener, Ropa, John Doe"2", Galasa, and John Doe "3" in that it has paid an amount to be determined at trial, but in no event less than Forty-Eight Thousand ($48,000.00) Dollars, pursuant to the fraudulent bills submitted through Leica.

130.   By reason of its injury, GEICO is entitled to treble damages, costs and reasonable attorney's fees pursuant to 18 U.S.C. Section 1964(c), and any other relief the Court deems just and proper.

### NINTH CAUSE OF ACTION AGAINST
### LEICA AND BRANFENBRENER
#### (Common Law Fraud)

131.   GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 130 of this Complaint as if fully set forth at length herein.

132.   Leica and Branfenbrener intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for DME and orthotic devices.

133.   The false and fraudulent statements of material fact and acts of fraudulent concealment include:

(i)   In every claim for DME for which the New York State Medicaid program has not established fees payable, the representation that Leica's charges for DME and orthotic devices did not exceed the lesser of the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50 percent, or the usual and customary price charged to the general public.

(ii)   In every claim for DME for which the New York State Medicaid program has not established fees payable, the representation that the prices reflected in the wholesale invoices, when provided, were bona fide and that Leica actually paid the wholesaler the amounts set forth in the wholesale invoices.

(iii)   In every claim for DME and orthotic devices for which the New York State Medicaid program has established fees payable, the representation that the goods represented in the billing actually were the goods supplied to Insureds.

(iv)   In every claim, concealment of the fact that the DME and orthotic devices actually provided to Insureds were cheap, low-quality goods, rather than the far more expensive goods for which billing was submitted.

(v)     In every claim, concealment of the fact that Leica was rebated a large percentage of the money that it represented to have paid to the Wholesale Defendants.

(vi)    In every claim, concealment of the fact that the DME and orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Leica and Branfenbrener paid kickbacks to the Physicians and/or Clinics to induce the Physicians and/or Clinics to direct their associated physicians to (a) prescribe large amounts of medically unnecessary DME and orthotic devices, (b) primarily prescribe DME not covered by the New York State Medicaid fee schedule, and (c) with respect to DME covered by the New York State Medicaid Fee Schedule and orthotic devices, write the prescriptions in a generic non-descript manner, all of which was designed to permit Leica and Branfenbrener to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to GEICO and other New York automobile insurers.

134.    Leica and Branfenbrener made false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges that were not compensable under the No-Fault Laws, or that were far in excess of the charges that otherwise would be compensable under the No-Fault Laws.

135.    GEICO justifiably relied on Leica's and Branfenbrener's false and fraudulent representations, and as a proximate result has incurred damages of more than Forty-Eight Thousand Dollars ($48,000.00) based upon the fraudulent charges.

136.    Leica and Branfenbrener's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

137.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TENTH CAUSE OF ACTION AGAINST
## LEICA AND BRANFENBRENER
### (Unjust Enrichment)

138.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 137 above.

139.   As set forth above, Leica and Branfenbrener have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

140.   When GEICO paid the bills and charges submitted by or on behalf of Leica for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Leica and Branfenbrener improper, unlawful, and/or unjust acts.

141.   Leica and Branfenbrener have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

142.   Leica and Branfenbrener's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

143.   By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than the total sum of Forty-Eight Thousand ($48,000.00) Dollars.

## ELEVENTH CAUSE OF ACTION AGAINST ROPA, JOHN DOE "2" AND GALASA
## AND JOHN DOE "3" AND THE PHYSICIAN AND CLINIC DEFENDANTS
## (CHILAIRE, SILVERMAN, VAN COURTLAND, AND SS MEDICAL)

### (Aiding and Abetting Fraud)

144.   GEICO repeats and realleges each and every allegation contained in Paragraphs 1 through 143 of this Complaint as if fully set forth at length herein.

145.   Ropa, John Doe"2", Galasa, John Doe "3" (Wholesale Defendants), and

CHilaire, Silverman, SS Medical, and Van Courtland (the Clinic and Physician Defendants) knowingly aided and abetted the fraudulent scheme perpetrated on GEICO by Leica and Branfenbrener.

146.    The acts taken by the Wholesale Defendants and the Clinic and Physician Defendants in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs in order to support the fraudulent billing submitted to GEICO and other New York automobile insurers through Leica (Wholesale Defendants); (ii) knowingly creating fraudulent invoices through the deliberate omission of the most basic information associated with the DME and orthotic supplies provided, including the manufacturer, make and/or model of the supplies (Wholesale Defendants); (iii) converting check payments received from Leica and Branfenbrener into cash, and then returning/rebating the bulk of the cash to Leica and Branfenbrener, to make it appear as if Leica and Branfenbrener actually paid the prices for the DME and orthotic devices as set forth on the fraudulent wholesale invoices (Wholesale Defendants); and (iv) knowingly supporting the negotiation and performance of kickback agreements between Leica and Branfenbrener and the Physicians and/or Clinics (Wholesale Defendants); and (v) knowingly entering into negotiation and performance of kickback agreements with Leica and Branfenbrener (Clinic and Physician Defendants).

147.    The conduct of the Wholesale Defendants and the Clinic and Physician Defendants in furtherance of the fraudulent scheme is significant and material. The conduct of the Wholesale Defendants and the Clinic and Physician Defendants is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no

opportunity for Leica and Branfenbrener to obtain fraudulently-inflated payments from GEICO and from other New York automobile insurers.

148.    The Wholesale Defendants and the Clinic and Physician Defendants aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to Leica and Branfenbrener for DME and orthotic devices that were not compensable under the No-Fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

149.    The conduct of the Wholesale Defendants and the Clinic and Physician Defendants caused GEICO to pay money based upon the fraudulent charges submitted through Leica in an amount to be determined at trial, but in no event less than Forty-Eight Thousand ($48,000.00) Dollars.

150.    The Wholesale Defendants and the Clinic and Physician Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

151.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## JURY DEMAND

152.    Pursuant to Federal Rule of Civil Procedure 38(b), GEICO demands a trial by jury.

**WHEREFORE,** Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor and against the Defendants, as follows:

A.      On the First Cause of Action, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Threeonix  Supply Corporation and Leica Supply Inc. have no right to receive payment for any pending bills submitted to GEICO;

B.      On the Second Cause of Action against Illinsky, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of Thirty-Six Thousand ($36,000.00) Dollars, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.      On the Third Cause of Action against Illinsky, New Step, John Doe "1", Galasa and John Doe "3', compensatory damages in favor of GEICO an amount to be determined at trial but in excess of Thirty-Six Thousand ($36,000.00) Dollars, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.      On the Fourth Cause of Action against Threeonix and Illinsky, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of Thirty-Six Thousand ($36,000.00) Dollars, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

E.      On the Fifth Cause of Action against Threeonix and Illinsky, more than Thirty-Six Thousand ($36,000.00) Dollars, in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

F.      On the Sixth Cause of Action against New Step, John Doe "1", Galasa, John Doe "3" and the Physician and Clinic Defendants (Bedford, Caregiver, Cure, DXR, Targee, New

Quality, and Diamant, Hanna, Hilaire, Karakizis, Olmedo, Ratsenberg, Dxrodriguez, ERodriguez, Vaynshteyn, Villano, Vinokurova, Williams) , compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of Thirty-Six Thousand ($36,000.00) Dollars, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

G.    On the Seventh Cause of Action against Branfenbrener, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of Forty-Eight Thousand ($48,000.00) Dollars, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.    On the Eighth Cause of Action against Branfenbrener, Ropa, John Doe "2", Galasa and John Doe "3", compensatory damages in favor of GEICO an amount to be determined at trial but in excess of Forty-Eight Thousand ($48,000.00) Dollars, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.    On the Ninth Cause of Action against Leica and Branfenbrener, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of Forty-Eight Thousand ($48,000.00) Dollars, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

J.    On the Tenth Cause of Action against Leica and Branfenbrener, more than Forty-Eight Thousand ($48,000.00) Dollars, in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

K.    On the Eleventh Cause of Action against Ropa, John Doe "2", Galasa, John Doe "3" and the Physician and Clinic Defendants (CHilaire, Silverman, Van Courtland and SS

Medical), compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of Forty-Eight Thousand ($48,000.00) Dollars, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

Dated: Woodbury, New York
July 26, 2011

LAW OFFICES OF TERESA M. SPINA

By:_____
P. Stephanie Estevez, Esq (PSE3505)
170 Froehlich Farm Blvd.
Woodbury, New York 11797
Telephone:      (516) 496-5822
Direct:            (516) 714-7354
Facsimile:       (866) 953-5356

*Counsel for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co, GEICO General Insurance Company and GEICO Casualty Co.*

52