UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY, and GEICO CASUALTY
COMPANY,

**MEMORANDUM AND ORDER**
11-CV-3781 (KAM)(VVP)

                Plaintiffs,

   -against-

LEICA SUPPLY, INC. and GRIGORY
BRANFENBRENER, et al.

                Defendants.

----------------------------------------X
**MATSUMOTO, United States District Judge:**

      Presently before the court is a renewed motion for default judgment filed by Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "plaintiffs"), seeking a declaration that plaintiffs are not legally obligated to pay outstanding fraudulent claims submitted by defendant Leica Supply, Inc. ("Leica" or "defendant"). On May 17, 2013, defendant was properly served with plaintiffs' renewed motion for declaratory judgment at Leica's last known address. (Certificate of Service, ECF No. 133-8.) To date, Leica has not responded to the renewed motion. In addition, Leica's default in this action was previously noted by the Clerk of Court on November 1, 2011. (ECF No. 38.) Therefore, the

court considers the motion fully briefed and, for the reasons set forth below, plaintiffs' motion for declaratory relief is granted.

## BACKGROUND

I.  **The Instant Action**

On August 4, 2011, plaintiffs filed the instant action against thirty-two defendants,[1] including Leica, asserting claims pursuant to the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), and under New York common law for fraud and unjust enrichment, seeking recovery of funds that defendants fraudulently obtained from plaintiffs by submitting false claims for payment for durable medical equipment and orthotic devices.  (*See generally* Compl., ECF No. 1.)  In addition, plaintiffs sought a declaratory judgment that they are not legally obligated to pay outstanding fraudulent claims submitted by Leica and other defendants.  (Compl. ¶ 2.)

Leica failed to answer timely or otherwise respond to this action and, as previously discussed, the Clerk of Court noted Leica's default on November 1, 2011.  (ECF No. 38.)  On April 4, 2012, plaintiffs filed a motion for default judgment

---

[1] Plaintiffs have voluntarily dismissed their claims against the majority of the defendants.  Plaintiffs previously withdrew their motions for default judgment against certain remaining defendants, Threeonix Supply Corp., Pavel Illinsky, Galasa Wholesale, Inc., New Step Services, Inc., and Ropa, Inc., and indicated that they were in settlement discussions with those defendants. (*See* Ltr. dated May 21, 2012, ECF No. 114; Ltr. dated Aug. 2, 2012, ECF No. 118.)

against Leica (ECF No. 109), and, on July 30, 2012, the court referred the motion, as well as a motion for default judgment against Leica's owner, Grigory Branfenbrener, to the Honorable Viktor V. Pohorelsky for a Report and Recommendation.[2] On March 6, 2013, Judge Pohorelsky issued his Report and Recommendation. ("R&R," ECF No. 122.) In the R&R, Judge Pohorelsky recommended that the court grant plaintiffs' motion for default judgment and award plaintiffs a total of $146,720.20, for which Leica and Branfenbrener would be jointly and severally liable in the amount of $48,906.76, and for which Branfenbrener would be individually liable in the amount of $97,813.52. (R&R at 1, 15.) Judge Pohorelsky further recommended that the court enter a declaratory judgment "stating that plaintiffs are not obligated to pay any of the outstanding claims in the amount of $392,065.84 submitted by Leica" to GEICO for payment, some of which were also the subject of lawsuits in state court brought by Leica against plaintiffs. (R&R at 15; *see also* Pls. Mot. for Default J. against Leica, Ex C, ECF No. 109-3 (list of outstanding claims and state court lawsuits by Leica against GEICO).) Plaintiffs properly served the R&R on Leica and Branfenbrener, and no objections were filed to the R&R. (*See* Certificates of Service, ECF Nos. 123-24.)

---

[2] Plaintiffs filed an earlier motion for default judgment against Leica (ECF No. 65) but withdrew that motion (ECF No. 100).

On March 30, 2013, the court adopted Judge Pohorelsky's R&R in all respects except for the recommendation that plaintiffs' request for declaratory relief against Leica be granted. ("Order Adopting R&R" at 5, ECF No. 125.) In addition, the court made a minor arithmetic correction to the R&R, finding that the total damages for which defendants Leica and Branfenbrener were liable was $146,720.28 but that Judge Pohorelsky's calculations of the amounts for which each defendant was liable were correct. (Order Adopting R&R at 5 n.2.) In denying plaintiffs' motion for declaratory judgment without prejudice to renew, the court concurred with Judge Pohorelsky's analysis regarding the fraudulent nature of Leica's outstanding claims but noted its concern over "a danger that the issuance of a declaratory judgment by this court would 'encroach on the domain' of the New York state courts, and aid the federal plaintiffs in a 'race to res judicata.'" (Order Adopting R&R at 6 (quoting *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 245 (2d Cir. 2012)).) The court also noted that there was not sufficient information before it about the nature of the pending state court lawsuits, which related to some but not all of the claims for payment Leica had submitted to GEICO, to determine whether a declaratory judgment should issue. (Order Adopting R&R at 8-9.)

On April 1, 2013, monetary judgment was entered against Leica and Branfenbrener in the amount of $146,720.28, $48,906.76 of which Leica was liable for, jointly and severally with Branfenbrener. (ECF No. 126). On May 20, 2013, plaintiffs renewed their motion for declaratory judgment. (Pls. Mot., ECF No. 133.)

**II. Criminal Case Against Defendant Branfenbrener**

Prior to the filing of the instant case, on June 8, 2010, Branfenbrener was indicted on charges of health care fraud conspiracy and money laundering conspiracy in connection with the scheme to defraud insurance companies. *See United States v. Branfenbrener, et al.*, No. 10-CR-459 (SJ) (E.D.N.Y. filed June 8, 2010). The United States Attorney's Office also filed a Superseding Information charging Branfenbrener with tax evasion, a charge for which Branfenbrener waived indictment. (No. 10-CR-459, ECF Nos. 205, 207.) As plaintiffs note, the sentencing memorandum filed on Branfenbrener's behalf identifies Leica as one of the shell companies through which Branfenbrener perpetrated insurance fraud. (No. 10-CR-459, ECF No. 246, at 4.) On November 3, 2011, Branfenbrener pled guilty to Count One of the Superseding Information, tax evasion, and Count Two of the Indictment, money laundering conspiracy. (No. 10-CR-459, ECF Nos. 206, 208.)

### III. The New York State Court Actions

As part of their supplemental submission to the court, plaintiffs have provided an affidavit dated May 16, 2013 from plaintiffs' counsel, P. Stephanie Estevez ("Estevez Aff.," ECF No. 133) and a declaration dated May 16, 2013 from Jennifer Fogarty, an employee of GEICO ("Fogarty Decl.," ECF No. 133-1). Fogarty states that, after a review of GEICO's records, she has identified unpaid claims asserted by Leica against GEICO totaling $245,662.22 as of May 16, 2013, the date of her declaration. (Fogarty Decl. ¶ 5.) Of this amount, $160,703.66 in unpaid claims are the subject of sixty-three separate lawsuits brought by Leica against GEICO in the Civil Court in the County of Queens. (Fogarty Decl. ¶ 5, Ex. A-1.) Counsel for GEICO reports that, as a result of Branfenbrener's guilty plea, all of Leica's state lawsuits against GEICO were voluntarily dismissed, except for the remaining sixty-three. (Estevez Aff. ¶ 19; Fogarty Decl. Ex. D (copies of stipulations of discontinuance).) Fogarty avers that the remaining sixty-three suits were all brought on Leica's behalf by an attorney no longer licensed to practice law in New York State and that it is unclear whether these suits will proceed. (Fogarty Decl. ¶ 7.)

**DISCUSSION**

I.  **Declaratory Judgment**

Pursuant to the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought". 28 U.S.C. § 2201. "The DJA 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant. The propriety of issuing a declaratory judgment may depend upon equitable considerations, and is also informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012) (quoting *Green v. Mansour*, 474 U.S. 64, 72 (1985)). The Supreme Court has cautioned, however, that abstaining from adjudicating a declaratory judgment, and abstention in general, "is the exception, not the rule. . . . 'Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185,

188-89 (1959)); see also *Vill. of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999) ("Because [abstention] is an exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." (citation omitted)).

Therefore, the first question before the court is whether or not the court should abstain from adjudicating plaintiffs' motion for declaratory relief. For the reasons set forth below, the court declines to abstain from granting the declaratory relief sought by plaintiffs in this case.

II. *Colorado River* Abstention Analysis

The applicable test for whether abstention is appropriate was articulated by the Supreme Court in *Colorado River*, 424 U.S. 800 (1976).[3] *Id.* at 817 (noting that the case's abstention standard applies to "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts"); *see also Vill. of Westfield*, 170 F.3d at 125 n.5 (noting that *Colorado River*

---

[3] Another abstention doctrine related to requests for declaratory relief, known as *Brillhart-Wilton* abstention after the Supreme Court's decisions in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), is not applicable in this case. The *Brillhart-Wilton* test is applicable where a party seeks declaratory relief only. *Niagara Mohawk*, 673 F.3d at 106 ("*Wilton* does not apply where, as here, a plaintiff does not seek purely declaratory relief, but also . . . seeks damages caused by the [defendant's] conduct.") (internal quotation marks and citations omitted; alteration in original); *see also Kanciper v. Suffolk Cnty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013) (same).

8

applies in cases involving parallel state court proceedings where the plaintiff sought both declaratory relief and money damages); *Gov't Emps. Ins. Co. v. Five Boro Psychological Servs.*, 939 F. Supp. 2d 208, 216 (E.D.N.Y. 2013) (applying the *Colorado River* test in an insurance fraud case factually analogous to the instant matter).

Pursuant to the *Colorado River* abstention doctrine, a district court may stay or dismiss a party's claims only where "(1) the relevant state and federal actions are 'concurrent' or 'parallel' and (2) evaluation of a six-factor test weighs in favor of abstention." *DDR Constr. Servs. Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 644 (S.D.N.Y. 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). "These six factors include: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." *Vill. of Westfield*, 170 F.3d at 121. The court's task in engaging in the *Colorado River* test "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to

ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses Cone*, 460 U.S. at 25-26, (emphasis in original).

The court finds that the instant case and Leica's state collection proceedings are not parallel and that, even if the federal and state actions were parallel, abstention would not be warranted under the *Colorado River* six-factor test.

   a. Whether the Instant Case and the State Collection Cases Are Parallel

The threshold question in determining whether a federal court should abstain under *Colorado River* is whether the state court proceedings are "parallel." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."). In determining whether two actions are parallel for purposes of *Colorado River* abstention, "a court may consider whether the actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested." *Hous. Works, Inc. v. City of New York*, 72 F. Supp. 2d 402, 417 (S.D.N.Y. 1999) (citing *Sheerbonnet Ltd. V. Am. Exp. Bank Ltd.*, 17 F.3d 36, 49-50 (2d Cir. 1994)). "Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue

in the case is the subject of already pending litigation." *GBA Contracting Corp. v. Fid & Deposit Co.*, No. 00-CV-1333, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 3, 2001). There must, however, be "a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 287 (E.D.N.Y. 2013) (citing *In re Comverse Tech., Inc.*, No. 06-CV-1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)) (emphasis in the original).

In light of these principles, the court finds that Leica's state court collection proceedings are not parallel under the three factors discussed in *Dittmer*. First, the identity of the parties, the GEICO entities and Leica, are the same. (*See* Forgarty Decl. Ex. A-1 (listing pending state court collection cases).) Second, the subject matter of the cases is virtually the same; Leica's civil actions against GEICO for payment in the state court proceedings are the same that were found to be fraudulent by this court. (*See* R&R at 14.) Applying the third factor, the relief requested in federal and state actions is distinct. Leica's actions in state court will not dispose of plaintiffs' RICO, common law fraud, unjust enrichment and declaratory judgment causes of action. Based on the distinct relief sought in the state and federal actions, the actions are not parallel. *But see Five Boro Psychological Servs.*, 939 F. Supp. 2d at 216 (finding that a federal case

regarding fraudulent insurance billing and state collection proceedings present an "example of parallel litigation in state and federal court."). Because the state actions and the instant case are not parallel, the court will not abstain from ruling on plaintiffs' renewed motion for declaratory judgment. *See, e.g.*, *Wells Fargo Bank, Nat'l Ass'n v. Kokolis*, No. 12-CV-2433, 2013 WL 789448, at *5 (E.D.N.Y. Mar. 1, 2013) (holding that abstention was inappropriate where there was no parallelism between the state and federal actions).

    a. <u>Under the Six-Factor *Colorado River* Test, Abstention is Not Warranted</u>

Even if the court were to find that the actions are parallel, the six *Colorado River* factors militate against abstaining in this action. To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16. "[A]lthough the test for *Colorado River* abstention is no 'mechanical checklist,' the district court *must* balance the relevant factors in reaching its decision." *Vill. of Westfield*, 170 F.3d at 121 (emphasis in original) (citation omitted). Consideration of each factor is set forth below.

i. *Factors One and Two: Jurisdiction Over a* Res *and Inconvenience of the Federal Forum*

The present case involves neither a *res* over which the court has exercised jurisdiction, nor an inconvenient federal forum. Therefore, the first two *Colorado River* factors weigh against abstention. *See Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 523 (2d Cir. 2001) ("[T]he absence of a *res* and the equivalent convenience of the federal forum are factors that favor retention of jurisdiction [by the federal court]."); *accord Remigio v. Kelly*, No. 04-CV-1877, 2005 WL 1950138, at *13-14 (S.D.N.Y. Aug. 12, 2005); *Wells Fargo Century, Inc. v. Hanakis*, No. 04-CV-1381, 2005 WL 1523788, at *10 (E.D.N.Y. June 28, 2005).

ii. *Factor Three: Avoidance of Piecemeal Litigation*

The third factor, avoidance of piecemeal litigation, also militates against abstention. As discussed previously, Leica's claims against GEICO are pending in sixty-three distinct state court lawsuits. (Fogarty Decl. ¶ 5.) In light of the judgment in this case that defendant is liable to plaintiffs for violations of the RICO statute and fraud and unjust enrichment based on its billing practices, it would be highly inefficient and duplicative for plaintiffs to continue to litigate defendant's entitlement to payment in so many cases. Several courts confronted with similar fraudulent insurance billing

schemes and related state court collection cases have emphasized the importance of this factor in not abstaining. *See Five Boro Psychological Servs.*, 939 F. Supp. 2d at 216 n.8 ("[Plaintiff] alleges a systematic, institutionalized fraudulent scheme designed to produce thousands of individual fraudulent no-fault claims. I reject the suggestion that such a defense is better raised and resolved (potentially in conflicting ways) in every one of literally hundreds of small-dollar cases pending in numerous different state courts, rather than in a single case like this one."); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 239 (E.D.N.Y. 2008) ("[T]he third factor argues against abstention in that the actions defendants have brought against plaintiff in state court appear to be individual litigations of claims to determine the medical necessity of the tests and consultations performed and/or billed. A declaratory judgment in this case might prevent the need for resolution of the pending individual cases."). The third *Colorado River* factor thus weighs heavily against abstaining in this case.

    iii.    *Factor Four: Order of Case Filing*

It is unclear from plaintiffs' papers when the state court cases were filed against GEICO. The Supreme Court, however, has emphasized that, for the purposes of the abstention analysis, "priority should not be measured exclusively by which

14

complaint was filed first, but rather in terms of how much progress has been made in the . . . actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21; *see also Woodford*, 239 F.3d at 524-25 (discussing the fourth *Colorado River* factor in terms of the progress made in the respective lawsuits and holding that district courts must consider the relative progress of both the state and federal cases). Plaintiffs' counsel avers that Leica is not represented by counsel able to practice in New York in the pending state cases, and there is no indication that Leica will resume prosecuting the pending cases. (Estevez Aff. ¶ 20.) By contrast, the instant matter has been fully litigated and monetary judgment entered against Leica on plaintiffs' RICO, common law fraud and unjust enrichment causes of action. For that reason, the fourth *Colorado River* factor also counsels against abstention.

        iv. *Factor Five: Whether Federal or State Law Supplies the Rule of Decision*

The fifth factor also weighs against abstaining in the instant case. Plaintiffs' RICO cause of action involves federal law. The Supreme Court has emphasized that "the presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction]." *Moses H. Cone*, 460 U.S. at 26; *see also Vill. of Westfield*, 170 F.3d at 124 ("the presence of federal issues strongly advises exercising federal

15

jurisdiction"). Even were this case to involve purely state law issues, this factor of the *Colorado River* analysis would still counsel against abstention. "[T]he absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Vill. of Westfield*, 170 F.3d at 124. In the instant action, the underlying state-law claims asserted by GEICO are common law claims of fraud and unjust enrichment and are not particularly novel or complex. *See Liguori* 589 F. Supp. 2d at 240 (finding similar claims to those in the instant case to be "not particularly complex"). Accordingly, the court finds that the fifth factor under *Colorado River* does not militate in favor of abstention.

> v. *Factor Six: Protection of Plaintiffs' Rights in the State Forum*

The sixth *Colorado River* factor is whether the state court proceeding will adequately protect the right the plaintiffs are seeking to vindicate in the federal lawsuit. Specifically, the court must determine whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone,* 460 U.S. at 28. While the court has no doubt that the New York Civil Court would adequately and fairly protect plaintiffs' rights, the sheer number of state court actions initiated by Leica and the serious questions about

16

the likelihood of those actions progressing in the near future indicates that plaintiffs are unlikely to have their claims resolved promptly. For that reason, the last *Colorado River* factor also weighs against abstention.

    vi. *Other Considerations*

Finally the court notes, as it did in its order adopting the R&R, that, in evaluating the appropriateness of abstention, the Second Circuit has also considered "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata.'" *Chevron Corp.*, 667 F.3d at 245. Plaintiffs have presented detailed briefing to demonstrate that such concerns are not significant in this case. This court adopted Judge Pohorelsky's findings that Branfenbrener, through Leica, engaged in fraudulent and inflated billing, and a monetary judgment has been entered against Leica based on these activities. Furthermore, Branfenbrener has pled guilty to offenses related to the fraudulent scheme at issue here. There is no indication, therefore, that plaintiffs are attempting to manipulate the outcome of the state court cases by their request for declaratory judgment. In sum, this case does not present the "exceptional circumstances" in which abstention is appropriate. *Colo. River*, 424 U.S. at 813; *see also Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-CV-4295, 2013 WL 5131057 (E.D.N.Y. Sept. 12, 2013); *Allstate Ins. Co. v. Smirnov*,

No. 12-CV-1246, 2013 WL 5407224 (E.D.N.Y. Aug. 21, 2013); *Five Boro Psychological Servs.*, 939 F. Supp. 2d 208 (all granting declaratory relief in factually similar fraudulent insurance billing cases).

**CONCLUSION**

Because the *Colorado River* analysis counsels against abstaining from adjudicating plaintiffs' motion for a declaratory judgment, the court grants plaintiffs' motion for declaratory judgment that plaintiffs are not liable to Leica for the claims sought by Leica in the state court actions and identified in the Fogarty Declaration. Upon plaintiffs' submission by April 4, 2014 of a proposed declaratory judgment, and upon the court's review, the Clerk of Court will be directed to enter the declaratory judgment against Leica. Also by that date, plaintiffs shall submit stipulations of discontinuance or a letter regarding the status of its claims against any defendants remaining in the instant case. Finally, plaintiffs shall serve a copy of this Memorandum and Order on Leica at its

last known address and file a declaration of service by March 31, 2014.

**SO ORDERED.**

Dated:	Brooklyn, New York
	March 28, 2014

	_____/s_____
	KIYO A. MATSUMOTO
	United States District Judge